IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

ROHAN G. COELHO                              )
and KATHRYN N. COELHO,                       )
                                             )
            Plaintiffs,                      )    TC-MD 140053C
                                             )
      v.                                     )
                                             )
DEPARTMENT OF REVENUE,                       )
State of Oregon,                             )
                                             )
            Defendant.                       )    **FINAL DECISION**

This Final Decision incorporates without change the court's Decision entered August 5, 2014. The court did not receive a request for an award of costs and disbursements within 14 days after its Decision was entered. *See* TCR-MD 19.

Plaintiffs appeal Defendant's Notice of Proposed Adjustment and/or Distribution dated December 6, 2013, for the 2012 tax year. A trial was held in the Oregon Tax Mediation Center on July 23, 2014, in Salem, Oregon. Rohan and Kathryn Coelho appeared on behalf of Plaintiffs. Rohan Coelho (Coelho) testified for Plaintiffs. Tony Inovejas (Inovejas) appeared and testified on behalf of Defendant. Plaintiffs exchanged seven exhibits, and requested that the court "consider them for trial" or to "reset[] the trial date." (Ptfs' Ltr at 1, July 18, 2014.) The court excluded all the exhibits because they did not comply with the court's exchange rule found in Tax Court Rule-Magistrate Division (TCR-MD) 10 C(1).[1] The exhibits were exchanged on July 18, 2014, and the physical receipt deadline in this case was July 14, 2014. Plaintiffs' requests were denied. Defendant's Exhibits A to G were received without objection.

/ / /

---

[1] TCR-MD 10 C(1) states "all exhibits must be either postmarked at least 14 days before the trial date or physically received at least 10 days before the trial date."

## I. STATEMENT OF FACTS

Plaintiffs filed a 2012 Oregon income tax return with a filing status of "married filing jointly." (Def's Ex A-1.) Plaintiffs reported 2012 federal adjusted gross income of $31,410 on that return. (*Id.*) Inovejas testified that Plaintiffs reported child care expenses of $3,941 for 2012 and their 2012 Oregon tax return reports a working family child care credit of $1,576. (Def's Ex A-2.)

Inovejas testified that Defendant reviewed Plaintiffs' return and requested additional information on June 6, 2013, to determine if Plaintiffs were entitled to the working family credit claimed on their 2012 return. Plaintiffs did not respond to that information request and Defendant's "Suspense Group" disallowed the entire amount of the credit. Inovejas testified that Defendant issued a notice to that effect on September 11, 2013. Plaintiffs filed a written objection October 9, 2013. Plaintiffs provided some supporting documents for the childcare expenses claimed with their objection and also sent Defendant some of Kathryn Coelho's wage statements. Defendant reviewed that information and allowed Plaintiffs a deduction of $88 for qualifying child care expenses, which reduced the working family credit from $1,576 as reported on the return to approximately $35. That determination was explained in Defendant's December 12, 2013, Notice of Proposed Adjustment and/or Distribution. (Ptfs' Compl at 4.) Plaintiffs timely appealed that determination to this court. The original basis for the reduction in the credit was a lack of substantiation of child care expenses. However, after the appeal was filed, Defendant asserted that Coelho was "not gainfully employed, not seeking employment, or not a full-time or part-time student." (Def's Ans at 2.) Defendant therefore asked that the court "uphold the adjusted refund issued in the Notice of Proposed Adjustment and/or Distribution dated 12/06/13." (*Id.*)

Coelho testified that he founded a business called Rexanto, Inc. (Rexanto) in 2008. According to his testimony, the business was organized as a C corporation and is incorporated in Delaware. Coelho testified that he worked for Rexanto from the time of its formation in 2008, and including 2012. Coelho further testified that he had four other employees working for the company, and that he and the other employees "work for stock options." Coelho testified the company generated no revenues in 2012 and that he earned no income in 2012.

Coelho testified that Rexanto is still in the developmental phase. The company builds a supply system for delivering medications to senior citizens that are specially packaged so that the consumers of the medications take them "correctly." Coelho further testified that the packaging has sensors and that there are other forms of reporting to provide feedback to the pharmacists on how the medications are working. Coelho testified that, to set up the system, he had to deal with packaging companies, pharmacies, pharmaceutical companies, and shipping companies. FDA oversight and approval was also involved.

Looking specifically at 2012, Coelho testified that he created presentations to show to the pharmacies, pharmaceutical companies, and packaging companies. Coelho testified that he also prepared Word documents and Excel spreadsheets, and that he developed software programs necessary for the operation of the business. Coelho further testified that he traveled frequently to make presentations to the various entities involved in the emerging business, and held meetings both over the telephone and in person. Coelho testified that much of the work he did in 2012 involved email exchanges. Coelho also testified that he entered into certain contracts with the various entities involved. Coelho testified that he began the operation by getting FDA approval, then persuading various pharmacies to "get on board" with the concept; that he got feedback from the pharmacies and eventually signed them up. Coelho testified that he then worked with

various pharmaceutical manufacturers to "get them to sign up," by showing them that he had pharmacies lined up and explaining and otherwise "selling" his concept. Finally, Coelho testified that he was able to pay some necessary salaries and expenses using capital invested in the company by outside investors.

## II. ANALYSIS

The issue in this case is whether Plaintiffs are entitled to claim the working family childcare credit provided in ORS 315.262 for the 2012 tax year.[2] The primary issue presented by the parties issue is whether Coelho was "gainfully employed" in 2012. A secondary issue, depending on the outcome of the first issue, is whether Plaintiffs adequately established that they had qualified child care expenses.

ORS 315.262 provides a credit for childcare expenses incurred for a qualifying child of a qualifying taxpayer to offset the child care costs incurred when a taxpayer is working, looking for work, or attending school. The credit is commonly known as the working family child care credit. The statute provides that, depending on the household size and income of the taxpayer, a certain percentage of qualifying childcare expenses may be taken as a credit against Oregon personal income tax liability. Additionally, if the amount of the credit exceeds the taxpayer's tax liability, the difference is refundable to the taxpayer for the year in question.

The credit at issue is "a credit against the taxes otherwise due under ORS chapter 316 equal to the applicable percentage of the qualified taxpayer's child care expenses." ORS 315.262(3). ORS 315.262(5)(a) authorizes the Oregon Department of Revenue (Department) to "[a]dopt rules for carrying out the provisions of [the statutory credit]." The Department adopted a rule covering various aspects of the credit.

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to the 2011 edition.

The relevant administrative rule in this case requires that, for married couples, both individuals must be "gainfully employed." OAR 150-315.262(3)(b)(C). That rule reads:

"(b) Costs associated with child care do not include:

"* * * * *

 "(C) Expenses for care provided when one spouse on a joint return is not *gainfully employed*, not seeking employment, not a full-time or part-time student, or not disabled * * *."

(Emphasis added.)

Neither the statute nor the administrative rule defines the term "gainfully employed." This court has previously ruled that "[a]llowable expenses do not include those spent when one spouse is not gainfully employed." *Parr v. Dept. of Rev.* (*Parr*), TC-MD 091457B, WL 768653 at *3 (2011). In *Parr*, the court noted that neither the statute nor corresponding administrative rule provided a definition of the term "gainful employment," and that the "IRC meaning of 'gainful employment' is highly persuasive." *Id*. at *4. The court ultimately relied on a definition in a U.S. Treasury Regulation pertaining to Internal Revenue Code (IRC) section 21 because one of the credits involved in that case, the Child Care Credit, which is allowed under ORS 316.078, "is specifically tied to IRC section 21," that both the Child Care Credit and the Working Family Credit require that "the care must be necessary to enable the taxpayer to work or, in the case of the Working Family Credit, attend school." *Id*. at *1, *3. The court in *Parr* also noted that the legislative policy in Oregon expressed in ORS 316.007(1) is "to '[m]ake the Oregon personal income tax law identical in effect to the provisions of the Internal Revenue Code relating to the measurement of taxable income of individuals[.]' " *Id*. at *4. IRC section 21 of the corresponding regulations relate to the federal credit for expenses for household and dependent care services necessary for gainful employment. The relevant portion of the regulation provides:

"[w]hether the purpose of an expense is to enable the taxpayer to be gainfully employed depends on the facts and circumstances of the particular case. Work as a volunteer or for a nominal consideration is not gainful employment." *Id*., citing Treas Reg § 1.21-1(c).

Defendant appears to be relying on the portion of the definition that refers to "nominal consideration," arguing that Coelho was not gainfully employed because he did not earn any income in 2012. Inovejas questioned Coelho about his earnings in 2012 and argued that to be gainfully employed one must earn income, or be working for money. Coelho's response was that he worked for stock options and that the proper inquiry should be whether stock based compensation equates with gainful employment. The court finds it unnecessary to determine whether actual earnings are required to establish "gainful employment" for purposes of the Working Family Credit provided in ORS 315.262 and the corresponding administrative rule. This is so because Plaintiffs have the burden of proof which, under ORS 305.427, is a "preponderance" of the evidence, and the court finds that they have failed to meet their burden. This court has previously ruled that "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971) (citation omitted).

In this case, in order for Plaintiffs to receive the Working Family Credit, they must have "qualified child care expenses," and the expenses must be incurred "for the purpose of allowing the taxpayer[s] to be gainfully employed, to seek employment or to attend school on a full-time or part-time basis." ORS 315.262(1)(a), (3).

The question is whether Coelho was gainfully employed. The only evidence that Coelho was gainfully employed is his sworn testimony. That testimony is by nature self-serving. There is no independent evidence to substantiate that Coelho worked in 2012. Coelho testified at

length about the many documents he prepared, presentations he made, the travel involved, etc. Coelho also testified that he often worked seven days a week and that he generally worked between 40 to 80 hours per week. It would have been helpful for the court in making its determination to have had samples of the documents Coelho testified that he prepared, evidence of his travel, sample contracts the company entered into, emails, etc. Plaintiffs did not even submit evidence establishing that Coelho incorporated a company called Rexanto. Coelho testified that he had four employees, but none of those individuals testified. Such testimony could have gone a long way in establishing that Coelho both had a business and that the spent a considerable amount of time developing that business (i.e., that he was gainfully employed in 2012). Coelho's wife, who is also a plaintiff in this matter, appeared at the trial but did not testify. Her testimony might have been helpful, given that the focus of the court's inquiry is on whether Coelho was gainfully employed, and Coelho testified that he performed a lot of his work from home. His wife Kathryn would presumably have first-hand knowledge of such work, and of Coelho's alleged travel promoting the business. While these criticisms may appear harsh, the court wants to be clear that it is not concluding that Coelho did not found a company or that he did not work for the company in 2012. Rather, the court has evaluated the evidence, and, more importantly, the lack thereof, and finds that there is simply insufficient evidence to establish by a preponderance of the evidence that Plaintiffs had qualifying child care expenses or that Coelho was gainfully employed in 2012. As a general proposition, it is difficult to satisfy the burden of proof by sworn testimony alone, particularly where such testimony could easily be substantiated by any one of a number of documents or the testimony of four or five individuals and neither is presented.

/ / /

Even if Plaintiffs had established Coehlo was gainfully employed, there was no testimony as to the child care expenses Plaintiffs reportedly paid in 2012. Nor are there any corroborating documents in evidence for the court to review. Defendant determined Plaintiffs substantiated child care expenses of approximately $88, which entitled them to a credit of $35. Having concluded that Plaintiff's failed to establish that Coehlo was gainfully employed, Plaintiff's are not entitled to any credit for child care expenses for 2012.

## III. CONCLUSION

The court concludes that Plaintiffs have failed to establish by a preponderance of the evidence that they are entitled to claim any of the amount of child care expenses reported or, more importantly, any amount of the Working Family Credit they claimed for 2012. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied and Plaintiffs are not allowed a working family credit for 2012.

Dated this ____ day of August 2014.

_____
DAN ROBINSON
MAGISTRATE


*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.*

*This document was signed by Magistrate Dan Robinson on August 20, 2014. The court filed and entered this document on August 20, 2014.*